Muth et al., *v.* Pennsylvania Railroad, Appellant.

64

Argued May 5, 1930.

Before Trexler, P. J., Keller, Linn, Gaw-throp, Cunningham and Baldrige, JJ.

*Robert D. Dalzell* of *Dalzell, Dalzell & McFall,* for appellant.—A trespasser can only recover for wanton or intentional injury: Gillis v. Pennsylvania Railroad Company, 59 Pa. 129; Pennsylvania v. Beale, 73 Pa. 504.

*J. Thomas Hoffman* and with him *Guy B. Hoge,* for appellee.—A person entering a crossing after having stopped, looked and listened, is not under a duty to stop again after having been committed to the crossing: Frank v. Reading Co., 297 Pa. 233; Razzis v. Phila. & Reading Ry. Co., 273 Pa. 550.

OPINION BY BALDRIGE, J., July 10, 1930:

The appellant maintains a produce yard containing thirteen tracks in the City of Pittsburgh. These tracks are in pairs with a space of about 24 feet on either side of each pair for vehicles to drive east and west for the purpose of loading and unloading cars. There is a crossing, 30 feet wide, running north and south over these tracks. A large amount of business is transacted daily in this yard as the produce is sold and delivered where the cars are spotted.

It appears under the plaintiffs' testimony that about 4:30 in the afternoon of March 12, 1928, the A. B. Produce Company's truck, driven by Charles Reed and on which the minor plaintiff was riding as a helper, entered the yard at 18th Street with a partial load of produce to be put in the car standing on track No. 1. The truck, proceeding at the rate of 15 miles per hour, crossed several tracks on the way to its destination. As it was crossing track No. 10, at a distance of about 5 feet to the left of a draft of cars which were standing flush with the crossing, the cars were moved, without warning, and collided with the truck, pushing it to the opposite side of the crossing and injuring the occupants and damaging the truck.

This action was brought to recover damages for the injuries sustained by the helper as the result of the alleged negligence of the defendant company, and verdicts were rendered in favor of the plaintiffs, which the court refused to disturb.

The appellant contends (1) that there could be no recovery as the injured plaintiff had no right to be in the yard at the time of the accident, and (2) that he was guilty of contributory negligence.

It is true, as maintained by the appellant, that there was no proof of any contractual right with or express permission from the appellant company to put the produce in the car and that most of the business of buying, selling, delivering, and transferring produce ended at 2:00 P. M. But from the evidence offered upon the part of the plaintiffs, the yard was open and the crossing was used by vehicles delivering produce from one car to another and for other purposes until 5:00 o'clock. The yard master called upon the part of the defendant admitted that the trucks remained in the yard until that time. The driver and his helper had, under the circumstances, the right to feel confident that the appellant would discharge its duty by exercising a reasonable care and give adequate warning of train movements. With the amount of traffic on this crossing, there was reason for apprehending the use of the tracks by others and precaution was a necessary duty of the appellant in the moving of its cars.

The appellant maintains that under the authority of Gillis v. P. R. R. Co., 59 Pa. 129, it was liable only for a wanton or an intentional injury. The injured person was an employe of a produce merchant and had, in his possession, the key of the freight car in which the produce was to be shipped. He was using the crossing, not as a stranger or an intruder, but under an implied invitation from the appellant. As the lower court well said, "It would seem unreason-

able to hold that the plaintiff was bound, before entering the yard, to verify from the defendant that the owner of the produce actually had contracted for its shipment or that failing to make such inquiry, it (Produce Company) must be treated as a trespasser." As the injured plaintiff had the privilege to be in the yards, it follows that the failure of the appellant's employes to exercise a reasonable care to avoid the collision was negligence: Kay v. P. R. R., 65 Pa. 269; Curtis v. DeCoursey, 176 Pa. 446; Robb v. Niles-Bement-Pond Co., 269 Pa. 298; John v. Reick-McJunkin Dairy Co., 281 Pa. 543.

This brings us to the question of the alleged contributory negligence of the helper and driver in failing to "stop, look and listen" before entering on track No. 10. They testified that the truck was stopped at the corner of 18th and Pike Streets about 5 feet from the entrance to the yards, just before entering track No. 14, and where they had a clear vision across the intervening tracks to track No. 1. There were no cars on track No. 14, but on tracks 13, 12, 11 and 10 cars were standing on either side of the driveway. The appellant contends that the driver of the truck should have stopped between tracks 11 and 10 where there was a 24-foot space. They were driving a large 2½ ton truck and although the driver was unable to give its length, it probably would have required most of that space to accommodate it. Stopping at that point would not have given information to the driver that an engine was attached to this draft of nine cars on No. 10 track as the tracks curved to the left and his vision was limited to about four cars. The driver and helper having stopped, looked and listened before committing themselves to the crossings were not required, under the conditions that prevailed, to stop before crossing each of the successive tracks unless there was reasonable apprehension that there would be a movement of cars. It is a well known fact

that cars placed upon the siding in railroad yards remain there for hours, and the mere presence of the cars would not of itself indicate their movement. If it is the duty of a driver of a truck crossing a series of tracks, where there is traffic, to stop before entering each track, those following in the rear might be placed in a hazardous position as, for instance, in this case, there is only a 5-foot clearance between the pairs of tracks. This requirement would not only be impracticable, but dangerous. Mr. Justice KEPHART, in Frank v. Reading R. R., 297 Pa. 233, said that this is a situation which should not be worked out through a trial judge but rather left to the jury to determine whether care was exercised under the circumstances. This is not a case of stopping where there is a limited vision before crossing a siding and an intervening space before reaching the main tracks, where one can safely stop and look for an approaching train, as in Siegel v. N. Y. C. R. R., 67 Pa. Superior Ct. 307, but comes under the rule that where stopping after the tracks have been entered upon might be more dangerous than proceeding, one ought to get over the tracks as rapidly as conditions warrant. See Frank v. Reading R. R., supra; Barthelmas v. L. S. & M. S. Ry Co., 225 Pa. 597; Razzis v. P. & R. Ry. Co., 273 Pa. 550; Thomas v. P. R. R., 275 Pa. 579.

Judgments are affirmed.